UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| CHRISTOPHER DYER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:16-cv-02782-DML-TWP |
| | ) | |
| THORNTONS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

# Order on Defendant's Motion for Summary Judgment

This is a slip-and-fall case. Defendant Thorntons, Inc. owns and operates the gas station/convenience store where plaintiff Christopher Dyer asserts he slipped and fell on a slick surface outside while returning to his car. It moves for summary judgment. As explained in this entry, Mr. Dyer has not satisfied his burden of demonstrating a genuine issue of material fact for trial. The court therefore GRANTS the defendant's motion.[1]

## Summary Judgment Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material fact" is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248

---

[1] The parties consented to the magistrate judge conducting all proceedings and ordering the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

(1986). A genuine dispute of material fact exists if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249.

The party moving for summary judgment bears the initial burdens of informing the district court of the basis for its motion and identifying the evidence it believes demonstrates the absence of a genuine dispute as to a material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). The nonmovant may not rest on his pleadings. He must identify specific facts and affirmatively demonstrate for each element of his case on which he bears the burden of proof that there is a genuine issue for trial. *See id.* at 324; *Hemsworth v. Quotesmith.com., Inc.,* 476 F.3d 487, 490 (7th Cir. 2007).

The court construes the evidence, and draws all reasonable inferences from the evidence, in the light most favorable to the nonmoving party. *Zerante v. DeLuca,* 555 F.3d 582, 584 (7th Cir. 2009). But neither the existence of some metaphysical doubt as to a material fact nor inferences that find support in only speculation or conjecture will defeat a summary judgment motion. *Chiaramonte v. Fashion Bed Group, Inc.,* 129 F.3d 393, 395 (7th Cir. 1997); *Fischer v. Avanade, Inc.,* 519 F.3d 393, 401 (7th Cir. 2008).

The requirement that the *nonmoving* party designate specific facts demonstrating a genuine issue for trial on each element of his claim for which he bears the burden of proof is a feature of federal court jurisprudence applying Fed. R. Civ. P. 56. It differs, sometimes with outcome-determinative effect, from summary

judgment practice in Indiana state courts, where the *moving* party must demonstrate that undisputed facts negate as a matter of law an essential element of the opposing party's claims. Thus, Indiana places a heightened and more onerous burden on the moving party. *See Gaff v. Indiana-Purdue University of Fort Wayne,* 51 N.E.3d 1163, 1165 (Ind. 2016) (Indiana Supreme Court's recognition and description of how the Indiana standard applied by Indiana state court differs from the federal standard applied by federal courts).

The court highlights these differences between the federal and state rules because the plaintiff's opposing summary judgment brief relies on Indiana cases in discussing summary judgment standards. *See* Dkt. 26 at pp. 2-3. While most of the plaintiff's discussion concerns matters that do not differ between the federal and Indiana systems, such as viewing evidence and its reasonable inferences in the light favorable to the nonmoving party, decisions by Indiana courts that *depend* on the movant's failure to negate at least one element of the plaintiff's claim cannot be reflexively applied by a federal court in its analysis of whether the plaintiff has demonstrated a fact issue for trial on *each* element of his claim.

## **Undisputed Facts**

Plaintiff Christopher Dyer has not challenged any facts designated by Thorntons, but adds some additional facts. For purposes of analysis, the court therefore accepts the evidence submitted by the parties, and will draw the reasonable inferences from that evidence in favor of Mr. Dyer. The evidence on summary judgment is as follows.

Mr. Dyer visited a Thorntons gas station/convenience store located at 5760 Crawfordsville Road, Speedway, Indiana on the morning of March 7, 2015, a place he goes every morning before heading to his place of work across the street. Consistent with his normal routine, Mr. Dyer got there about 7:30 a.m.[2] The store has a sidewalk along its front, and it has a handicapped-accessible ramp leading directly to the sidewalk area in front of the store's entrance and exit doors. There are four parking spaces to the east of the ramp (with the one closest to the door marked as a handicapped space), and Mr. Dyer parked his car in the third space to the east. He got out of his car and noticed either snow, ice, or "black ice" (though no slush) on the ground near his parking spot. (Dyer Dep., Dkt. 23-2, 28:18-23; 29:18-21). As Mr. Dyer made his way into the store, he walked across two empty parking spaces closest to the front door (including the handicapped space), walked up the handicapped-accessible ramp, and entered the store. He noticed slush on the sidewalks, on the ramp, and by the front doors. (Dyer Dep., Dkt. 23-2, 29:18-30:1).

Mr. Dyer purchased his items in the store and headed outside.[3] He walked to his car the same way he had come in. (*Id.,* 39:13-18). He focused his eyes on where he was walking, looking to see where he needed to step because of the slush, and

---

[2] A still picture from the store's outside surveillance camera shows Mr. Dyer's car pulling into a parking spot at 7:24:36 a.m. (*See* Dkt. 23-5 at p. 7). The camera is trained on the gas pumps in the parking lot but also shows the rear halves of parking spaces in front of the store. *Id.*

[3] A still picture from the inside surveillance camera shows Mr. Dyer preparing to leave the store at 7:30:30 a.m. (Dkt. 23-5 at p. 9). The store's surveillance cameras do not show the front sidewalk, the front sections of the parking spots, or the area where Mr. Dyer fell.

was trying to be careful. (*Id.*, 39:22-40-6). According to Mr. Dyer, there was slush on the ramp where he was walking, and he knew to watch where he was walking because slush is always dangerous. (*Id.*, 40:3-13). Mr. Dyer fell in an area just off the ramp "where it goes to flat land" and next to the handicapped-reserved parking spot east of the front doors. (*Id.*, 41:3-16).[4] His right knee hit the ground and he heard a popping sound; his right arm also hit the ground. (*Id.*, 52:10-22). Mr. Dyer contends that his fall was caused by the fact that slush was coating the blue painted lines that traverse and mark a no-parking zone outside the front doors, including the ramp, and that the combination of slush on the paint was the culprit. (*Id.*, 51:17-24). This is the same slush he had seen when he had entered the store about six minutes earlier. (*Id.*, 52:4-6).

At the relevant time period, Thorntons had a contract with a snow removal company (Rask & Associates, Inc.) that required Rask, without any special request from Thorntons, to plow and salt the store's parking lot when snow accumulation equaled or exceeded two inches and to plow and/or salt at any other time that Thorntons made a request for it to do so. In the week before Mr. Dyer's fall, Rask had plowed the parking lot on March 1, 2015, after about 5.9 inches of snow had fallen in the preceding 24 hours.[5] Rask also salted the parking lot on March 2,

---

[4] A photograph of the store front on which Mr. Dyer marked the place of his fall during his deposition is at Dkt. 23-6. The photograph was not taken at or near the time of Mr. Dyer's fall but it depicts the area of the fall.

[5] The snowfall information is provided by a certified climate report, at Dkt. 23-10, p. 2. Mr. Dyer does not challenge the admissibility of the climate report.

5

2015. Rask did not plow or salt on any of the other days immediately preceding Mr. Dyer's fall on March 7. From about 9:00 a.m. on March 3 until about 1:00 a.m. on March 4, the weather was misty with occasional measurable rain and an aggregate "water equivalent" of precipitation measuring at .35 inch. (*See* Dkt. 23-10 at pp. 3-5). On March 4, no precipitation fell except a "trace" of snow in the early evening between 4:30 p.m. and about 8:00 p.m.[6] There was no precipitation at all between 8:00 p.m. on March 4 through the morning of March 7 (about a 60 hour period), when Mr. Dyer fell. (*Id.* at pp. 5-8).

At the relevant time period, Thorntons' corporate policies required its employees to telephone corporate headquarters about any unsafe conditions at the stores, and employees were required to do so if they believed that a parking lot should be salted, which would trigger a request by Thorntons to Rask to perform that task. Employees were also required to do a "property walk" once during the morning during an initial inspection and then "as needed" during the day. (Sebastian Dep., Dkt. 27-1, p. 21, line 23 to p. 22, line 16). But there was no requirement that the parking lot be proactively checked throughout a day and, according to the surveillance video for the morning of March 7, no employee had checked the parking lot in the hour surrounding (both before and after) Mr. Dyer's fall. (Sebastian Dep., p. 27, line 20 to p. 28, line 2).

---

[6] The climate report uses the term "trace" to describe precipitation in a form that is not significant enough to measure as .01 inch or higher in water equivalent.

Thorntons' records show that no call or other report was made to Thorntons headquarters about any unsafe conditions because of snow, or ice, or slush on the store's parking lot or sidewalk, including the handicapped-accessible ramp, in the days preceding Mr. Dyer's fall. Nor was there any call to request that the parking lot be salted.

Thorntons' corporate policies also required its employees to report any incidents involving injuries to customers at a store, including from falls. Thorntons' store manager (Brandon Williams), who was on duty at the time of the fall, completed an incident report. He reported that there was no ice in the parking lot during the morning of Mr. Dyer's fall. Dkt. 23-7.[7] No other incident reports were made in any of the days immediately preceding Mr. Dyer's fall.

## Analysis

The court is exercising diversity jurisdiction and therefore applies state substantive law; in this case, the law of Indiana. *Goesel v. Boley Inter'l (H.K.) Ltd.,* 806 F.3d 414, 419 (7th Cir. 2015).

**I.      Indiana's substantive law of negligence applies.**

Mr. Dyer's claim against Thorntons sounds in negligence and thus requires him to prove that Thorntons owed him a duty and breached that duty, resulting in damages. *Rhodes v. Wright,* 805 N.E.2d 382, 385 (Ind. 2004). The parties do not dispute that because of Mr. Dyer's status as an invitee on Thorntons' premises,

---

[7]     Mr. Dyer does not challenge the admissibility of Mr. Williams's incident report. The incident report was filled out on March 9, 2015, two days after the fall.

7

Thorntons had a duty to exercise reasonable care for his protection. *Burrell v. Meads,* 569 N.E.2d 637, 639-40 (Ind. 1991) (describing duties owed by landowner).

Indiana has borrowed from, and adopted, Section 343 of the Restatement (Second) of Torts to supply the features of that duty. It provides that a landowner is liable for personal injuries suffered by his invitee because of a condition on the land "if, but only if," the landowner:

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.

*Burrell,* 569 N.E.2d at 639-40 (quoting Restatement (Second) of Torts § 343 (1965), and stating it provides the "best definition" of the landowner's duty to its invitee); *Rogers v. Martin,* 63 N.E.3d 316, 322-23 (Ind. 2016) (confirming that when an injury is caused by a condition on the land, "the three elements described in Restatement (Second) of Torts section 343 accurately describe the landowner-invitee duty").

Section 343A of the Restatement (Second) of Torts is "read in conjunction with § 343" and informs the negligence analysis. *See Merrill v. Knauf Fiber Glass, GmbH,* 771 N.E.2d 1258, 1265 (Ind. Ct. App. 2002); *Couvillion v. Speedway LLC,* 673 Fed. Appx. 558 (7th Cir. 2016) (citing *Douglass v. Irvin,* 549 N.E.2d 368 (Ind. 1990)) ("Indiana has adopted" Sections 343 and 343A of the Restatement (Second) of Torts) for premises liability cases). Section 343A provides that "'[a] possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition

8

on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.'"

The court applies these principles of law to the designated facts and the reasonable inferences from them; it is not otherwise salient to remark either that negligence cases are not the usual candidates for decision on summary judgment (as Mr. Dyer points out) or that the fact of injury from a condition on the land does not permit an inference of negligence.

Here, applying Indiana law, Thorntons first argues that Mr. Dyer has not designated evidence from which an inference can be drawn that it knew or should have known of the dangerous condition Mr. Dyer asserts existed on the premises and caused his fall. As a corollary, it contends there is an absence of evidence that it failed to take actions to protect its invitees against conditions because of recent or relatively recent snowfalls. Thorntons also argues that even if there were evidence of its actual or constructive knowledge of the alleged dangerous condition, it was open and obvious to Mr. Dyer (or any reasonable observer) and Thorntons cannot be held liable for Mr. Dyer's failure to protect himself.

II. **Mr. Dyer's testimony about the presence of slush prevents the court from finding on summary judgment that Thorntons could not have known about it.**

Thorntons asserts that there is no evidence from which an inference can be drawn that it knew or should have known about the alleged dangerous slushy conditions which Mr. Dyer contends caused his fall.

The undisputed evidence demonstrates that after a snowfall of nearly six inches on March 1, 2015 (six days before Mr. Dyer's fall), Thorntons' contractor

9

plowed the parking lot and then salted it on March 2.  Between then and the evening of March 4, barely any precipitation fell (a total of .35 inch), and between the evening of March 4 and the morning of March 7 when Mr. Dyer fell (about a 60-hour period), there was no precipitation at all.  The portions of the parking lot shown by the surveillance camera still photos do not depict snowy conditions; instead snow is cleared to the outer reaches.  The photos do not, however, show the precise location where Mr. Dyer says he fell.

Thorntons' corporate policies required its employees to conduct an initial inspection of the premises by conducting a "property walk" each morning (and "as needed" during a day) and for employees to notify corporate headquarters about any unsafe conditions because of snow, or ice, or slush on the parking lot or sidewalk so that additional clearing or salting could be undertaken.  Thorntons' corporate policies also required employees to report all incidents involving injuries to customers at a store, including from any falls.  There were no calls to corporate headquarters about any unsafe conditions and there were no incidents reported in any of the days immediately preceding Mr. Dyer's fall on March 7.  In addition, Thorntons' manager noted that there had not been ice on the parking lot when Mr. Dyer had fallen.

Mr. Dyer does not dispute any of this evidence.  This evidence raises the inference that Thorntons did not know and had no reason to know that its premises had at some point allegedly been rendered slick or unsafe by the morning of March 7 from the remnants of a six-inch snow fall six days earlier that had been plowed

and salted. Against this evidence, Mr. Dyer relies on three things: (1) his testimony about the condition of the premises as he found them the morning of March 7; (2) the absence of a Thorntons' policy to check its parking lot at regular intervals after a morning inspection; and (3) the lack of an inspection within the hour surrounding the time that Mr. Dyer fell at about 7:30 that morning.

The latter two facts do not create a genuine issue for trial because Mr. Dyer's theory is that the area close to the front doors, including parts of parking spaces, the handicapped ramp, and sidewalk, had some slush in spots because of remnants of weather events and not because some recent spill occurred that might have been ameliorated had a Thorntons employee checked the parking lot again after a morning inspection. But Mr. Dyer's own testimony does constitute evidence that portions of the area leading to the front door were slushy (the slush was "by the front door, the handicapped ramp, the sidewalks"; the places "where the plows couldn't get to"), even though Thorntons' manager found no ice or other conditions requiring action for clearing. Further, based on the somewhat widespread area Mr. Dyer described as having slushy conditions (even though Thontons has designated evidence from which a trier of fact may choose to not believe Mr. Dyer's testimony), an inference may be drawn that any other reasonable observer—including Thorntons' employees—should have noticed those same conditions. Although Thorntons implores the court to disbelieve Mr. Dyer's description of the conditions in light of the countervailing undisputed evidence, calling it "simply not true," the court may not do so on summary judgment. The countervailing evidence is not so

11

strong that the court may disregard as fanciful or "sheer speculation" Mr. Dyer's testimony that some slush was present in some areas where he walked into and out of the store. Neither of the surveillance-camera still photos, including Thorntons Exhibits 8 and 9 (at Dkts. 23-8 and 23-9), provides a clear enough picture for the court to declare that no slush whatsoever existed near the front door or ramp or in the area where Mr. Dyer fell.

The court notes, however, that Mr. Dyer's testimony barely meets a threshold for creating a dispute of material fact, and the court does not suggest that a premises-liability plaintiff may avoid summary judgment by claiming only that he saw a hazardous condition on the premises. The evidence designated on summary judgment is very strong that Thorntons had no reason to know of the slush Mr. Dyer identified, but the court is giving him the benefit of the doubt because of his description of the alleged widespread nature of the slush in areas that the surveillance photos do not completely refute. Moreover, as addressed below in Section III, Thorntons is entitled to summary judgment on other grounds.

Because of Mr. Dyer's testimony, the court is unable to conclude on summary judgment that there is no evidence from which a reasonable jury might find that Thorntons should have been aware of the slush that Mr. Dyer says existed in areas where he walked to enter the store. The veracity of Mr. Dyer's testimony would be one for a jury to weigh.

The court now turns to Thorntons' second argument, which concerns the extent to which a landowner may expect its invitee to protect himself.

### III. Thorntons is entitled to judgment because of Mr. Dyer's awareness of the danger and ability to protect himself.

Thorntons argues that even if a jury must decide whether it may have had constructive knowledge of some slush as described by Mr. Dyer, summary judgment is still appropriate because there is no evidence, or reasonable inferences from evidence, that Thorntons should have expected its invitees to be unable to observe the presence of some slush and protect themselves or that Mr. Dyer did not himself realize the danger. This argument is grounded in the second element of the Restatement's Section 343 duty inquiry and it implicates the "open and obvious danger" breach analysis addressed by the Restatement Section 343A.

Thorntons contends that the facts of this case bear a remarkable resemblance to a premises liability case decided on summary judgment in favor of the landowner by the United States District Court for the Northern District of Indiana, and that this court should reach the same result. In *Blackburn v. Menard, Inc.,* 2014 WL 6669489 (N.D. Ind. Nov. 24, 2014), the court granted summary judgment to Menard in part because the snowy condition on the land was obvious, the plaintiff himself had recognized the need to be careful, and no jury could therefore find that Menard failed to protect him. The court reasoned:

> Given plaintiff's testimony that he could clearly see the mix of rain and snow falling outside of defendant's store through the large windows at the store's exit, and given the plaintiff recognized the need to be careful when leaving the store due to the snow already on the ground and because of the falling rain and snow, no reasonable jury could find that defendant breached its duty 'to exercise reasonable care for the [plaintiff's] protection' by failing to warn plaintiff of the slippery condition of the sidewalk.

13

*Id.* at \*8 (citing *Henderson v. Reid Hosp. and Healthcare Servs.,* 17 N.E.3d 311, 315 (Ind. Ct. App. 2014) and *Parojcic v. Bethlehem Steel Corp.,* 128 F.3d 601, 604 (7th Cir. 1997) (relying on plaintiff's statement to conclude that no duty was breached because the defendant "could have reasonably expected that [the plaintiff] would discover the danger to which he was exposed and protect himself from it")).

Mr. Dyer contends that *Blackburn* should not be found persuasive for two reasons. First, he argues that *Blackburn* is factually distinct because in *Blackburn* it was "actively snowing at the time" and that plaintiff "fell on a sidewalk." While he points out these factual differences, Mr. Dyer does not make any argument how those facts make a difference to the legal analysis. The court will not make the arguments for him, and thus rejects his contention that *Blackburn* is not persuasive because of those fact differences. Second, he argues that while he did—like the plaintiff in *Blackburn*—acutely observe the danger (here, slush) and act carefully to avoid it precisely because he believed it to be dangerous—he did not truly appreciate the danger. That's so, says Mr. Dyer, because the slush alone was not the danger that caused his fall. Instead, he fell because:

> the slush in conjunction with the painted blue lines of the handicapped parking which when combined created a dangerous and hazardous mix to which the Plaintiff was not aware of. Yes, the Plaintiff was aware as to the slush but when the slush and painted blue lines intersected it created a dangerous slippery condition to which the Plaintiff was not aware.

Dkt. 26 at p. 7.

Mr. Dyer's attempt to create a question of fact by claiming that the danger was the painted blue lines of the handicapped zone, and not just the slush he agrees

14

he acutely observed and avoided because he knew of the slush's obvious danger, must be rejected. That contention relies on no evidence at all. There is nothing about the physical properties of the blue paint to allow an inference that some separate dangerous condition results. There is no evidence that anyone at Thorntons was aware or should have been aware that any moisture such as slush (or snow or ice, for that matter) in combination with the painted lines creates a special danger to its invitees. Without such evidence, the court is not willing to draw those inferences.

Mr. Dyer bore the burden to come forward with evidence to establish a genuine issue of fact for trial on each element of his claim. He has not done so, and in the federal system, summary judgment must therefore be entered against him.

## **Conclusion**

For the foregoing reasons, the court GRANTS the defendant's motion (Dkt. 21) for summary judgment. Final judgment will issue.

So ORDERED.

Dated: February 27, 2018

_Debra McVicker Lynch_
Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record by email through the court's ECF system